CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 27 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| SAMMY WOODRUFF, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:10-cv-95 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MONUMENTAL LIFE INSURANCE CO., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

After the plaintiff filed an action against his ex-employer in state court, alleging that it

withheld a severance package from him upon the termination of his employment in violation of

state law, the employer removed the case to this court on diversity grounds and subsequently

moved for its dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The court, after

reviewing the parties' filings and hearing argument on the motion, informed them of the

possibility that the action was preempted by the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001, et seq., as construed by Biggers v. Wittek Indus., 4 F.3d 291, 297

(4th Cir. 1993), and permitted the plaintiff to either file an amended complaint or to address the

preemption issue more fully. The plaintiff filed an amended complaint, alleging an ERISA

violation along with claims for relief based on a state statute, contract law, and quantum meruit.

The defendant subsequently moved to dismiss the amended complaint, and after another hearing

in the matter, the motion was submitted to the court for its resolution. Because the plaintiff's

state law claims are preempted by ERISA and because his ERISA claims are insufficiently

alleged, the defendant's motion to dismiss will be granted.

# I.  Factual and Procedural Background

The following facts are presented in the light most favorable to the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The plaintiff, Sammy Woodruff, was employed by the defendant, Monumental Life Insurance Company ("Monumental") for over thirty-six years, serving the company most recently as a Regional Vice President. In July of 2008, however, Monumental announced that it would be downsizing the company, and that its decisions in this regard would be based on employee performance. Shortly after learning of Monumental's plans, Woodruff met with Charles Green, the Senior Vice President of Monumental. Green informed Woodruff that if he was not kept in his current position as a Regional Vice President, he would be appointed as an "MSA Regional Director" or, at the very least, would receive a severance package. On September 30, 2008, Woodruff received notice that Monumental intended to terminate his employment. As of this date, Woodruff ranked higher in terms of performance than three other Regional Vice Presidents who were retained by Monumental.

That December, Woodruff spoke with Karen Farris, Monumental's Office Administrator, about the fact that they would both be terminated in the next year. Farris and Woodruff also spoke about the plans they had for investing the severance packages that they anticipated receiving. (Compl. Ex. 3.)

On January 20, 2009, Woodruff received an email from Ralph Arnold, Monumental's Chief Financial Officer, wondering whether Woodruff would like to purchase his company car. If so, Arnold indicated that Monumental would deduct the amount from Woodruff's bonus, which was payable at the end of March. (Compl. Ex. 2.) Woodruff replied on March 4, asking Arnold to

instead deduct the price from his severance pay rather than his bonus. Id. Arnold replied on the

same day, noting, "We will deduct [the price] from your severance payout." Id.

In mid-March, Green called Woodruff and informed him that he would not in fact be

receiving a severance package. Shortly thereafter, Woodruff complained to Monumental's legal

department about his non-receipt of a severance package. The legal department referred

Woodruff's complaint to Monumental's Human Resources department, who told Woodruff on

June 25, 2009, that there was no evidence that he had been offered a severance package and that

the proper policies and procedures were followed regarding the reassignment of Monumuental's

Regional Vice Presidents.

On January 16, 2010, Woodruff received a call from Steve Jecker, Senior Marketing

Officer at Monumental. Jecker told Woodruff that, during a meeting in which Jecker participated,

Monumental's President, Henry Hagen, said, "Let's not pay Sammy his severance pay and see

what he does."

Woodruff filed suit in the Circuit Court for the City of Winchester, Virginia, on August

19, 2010, alleging a state law breach of contract claim and a quantum meruit claim and seeking

$100,000 in damages. On September 10, 2010, Monumental filed a demurrer, motion craving

oyer, and answer in the state court. Subsequently, Monumental timely removed the case to this

court, asserting diversity jurisdiction. Woodruff is a citizen of Virginia, and Monumental is

incorporated in Iowa with its principal place of business in Maryland.

Simultaneous to its removal of the case to federal court, Monumental moved to dismiss

the case pursuant to Rule 12(b)(6). On November 19, 2010, the court advised the parties at the

hearing on Monumental's motion of the possibility that the action was preempted by ERISA and granted Woodruff leave to brief the matter or file an amended complaint.

On November 29, 2010, Woodruff filed an amended complaint, reciting the same facts that were stated in his initial complaint. He now alleges an ERISA violation, a violation of Virginia Code § 6.2-1363, breach of contract, and a quantum meruit claim. Attached to his complaint are two unsigned claims-waivers that pertain to one of Woodruff's former co-employees. The case is now before the court on Monumental's motion to dismiss the amended complaint under Rule 12(b)(6).

## II.    Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," viewing the complaint in the light most favorable to the plaintiff. Erickson, 551 U.S. at 94 (citations omitted); see also De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991). Still, the complaint must contain sufficient factual allegations that, when accepted as true, the complaint "state[s] a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). Consequently, a complaint consisting of bare legal conclusions is insufficient to survive a motion to dismiss. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a

4

formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement,'" or if it consists of "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949

(quoting Twombly, 550 U.S. at 557).

Moreover, where a complaint does contain well-pleaded facts, those facts must permit the

court to infer, "draw[ing] on its judicial experience and common sense," "more than the mere

possibility of misconduct"; if they do not, "the complaint has alleged—but it has not

'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citing

FED. R. CIV. P. 8(a)(2)). Accordingly, a court that is considering a motion to dismiss may

> choose to begin by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth. While legal conclusions
> can provide the framework of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give rise to an
> entitlement of relief.

Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950.

## III.  Discussion

### A.  ERISA Preemption of State Law Claims

Although Woodruff does not explicitly contest the court's suggestion that ERISA

preempts his state law claims, he nevertheless continues to assert state law claims in his amended

complaint. The court is convinced, however, that ERISA does in fact apply to this case and that it

preempts each of Woodruff's state law claims.

Significantly, an employer's failure to raise the issue of ERISA preemption does not

mean that the district court can simply adjudicate the plaintiff's asserted state law claims. The

United States Court of Appeals for the Fourth Circuit has explained in this context that

> [w]hen Congress preempts state law, it gives concrete expression to the
> constitutional authority granted by the Supremacy Clause of Article VI. The effect
> of a preemptive statute is, therefore, quasi-jurisdictional. A state court confronted
> with a dispute governed by a preemptive federal statute would have no authority
> to adjudicate the matter other than in accordance with the statute.

Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69-70 (4th Cir. 1988) (holding that the court

erred in adjudicating a claim on state law grounds rather than pursuant to ERISA even where the

employer did not raise a preemption argument before it).

The critical issue in this case, therefore, is whether ERISA does in fact apply to the

plaintiff's claims. Generally, "for ERISA to apply, there must be (1) a plan, fund or program, (2)

established or maintained (3) by an employer, employee organization, or both, (4) for the purpose

of providing a benefit, (5) to employees or their beneficiaries." Custer v. Pan American Life Ins.

Co., 12 F.3d 410, 417 (4th Cir. 1993) (citation omitted). It is well-established that ERISA's

preemption of state-law actions relating to "[employee benefit] plans rather than simply to

benefits" means that state-law claims are preempted only if they involve benefits "whose

provision by nature requires an ongoing administrative program to meet the employer's

obligation." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987).

Woodruff's amended complaint essentially alleges that Monumental agreed to allow

Woodruff to participate in a company-wide employee benefits plan "as other employees did."

(Compl. at ¶ 6.) Although the parties in this case had initially concluded that Woodruff's claims

were not preempted by ERISA, Fourth Circuit precedent is clear that ERISA applies to the

6

alleged arrangement for severance pay between Woodruff and Monumental. In Biggers v. Wittek

Indus., 4 F.3d 291 (4th Cir. 1993), the Court held that a company's promise to provide a

severance arrangement for an individual employee could be enforced only under ERISA and not

under state contract law. Id. at 297. In Biggers, one of the plaintiffs sued his ex-employer on a

state contract claim, alleging that he was entitled to severance benefits under an individual

contractual arrangement. Id. At trial, the plaintiff won almost $100,000 on his state law contract

claim. Id. On appeal, the defendant argued that ERISA preempted the applicability of state law to

the plaintiff's claim for severance benefits, while the plaintiff argued that his claim was based on

an individual contract for services and therefore did not constitute a benefits plan that was

covered by ERISA. Id. The Court observed that "[i]t is beyond question that plans established by

an employer to provide severance benefits are employee welfare benefit plans within the scope of

ERISA." Id. It then held that ERISA covered a benefits plan even if only one employee is a

participant in it. Id. at 298. Thus, the alleged contract between the plaintiff and the employer

constituted "an employee welfare benefit plan covered by ERISA." Id.

Woodruff's circumstances are almost identical with those facing the Court in Biggers.

See id. at 297. Moreover, Woodruff's amended complaint asserts that he expected a severance

package pursuant to a pre-established benefits scheme that applied to numerous of his co-

employees; it does not claim that he expected a one-time severance payment upon terms that

were unique to him. Compare Fort Halifax, 482 U.S. at 12; Winterrowd v. American General

Annuity Ins. Co., 321 F.3d 933, 939 (9th Cir. 2003) (holding that "a mere offer to extend

benefits" is not an ERISA plan unless the benefits are offered pursuant to an organized scheme

and the offer enables a reasonable person to discern the basic elements of the benefits scheme);

7

Elmore v. Cone Mills Corp., 23 F.3d 855, 861 (4th Cir. 1994) (en banc) ("An informal plan may

exist independent of, and in addition to, a formal plan as long as the informal plan meets all of

the elements outlined in [Donovan v. Dillingham, 688 F.2d 1367, 1372 (11th Cir. 1982) (en

banc)]."); Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 408 (9th Cir. 1995) (the

involvement of at least one employee is sufficient to establish the existence of an ERISA plan).

The court is therefore convinced that, based upon the allegations of Woodruff's amended

complaint, Biggers dictates a finding that ERISA applies to the alleged arrangement for

severance pay between Woodruff and Monumental. See Biggers, 4 F.3d at 298. Accord Emery v.

Bay Capital Corp., 354 F. Supp. 2d 589, 592 (D. Md. 2005) (holding that Biggers did not

eliminate Fort Halifax's requirement that ERISA preempts benefits claims only if they relate to

benefits paid pursuant to ongoing administrative programs or schemes); Blair v. Young Phillips

Corp., 158 F. Supp. 2d 654, 659 n. 2 (W.D. N.C. 2001) (same); Hand v. Church & Dwight Co.,

Inc., 962 F. Supp. 742, 744 (D. S.C. 1997); Stiltner v. Beretta U.S.A. Corp., 844 F. Supp. 242,

245 (D. Md. 1994).

The court is similarly persuaded that ERISA preempts each of the state law claims

asserted by Woodruff in this action. "ERISA preempts 'any and all State laws insofar as they may

now or hereafter relate to any employee benefit plan' covered by ERISA." Gagliano v. Reliance

Standard Life Ins. Co., 547 F.3d 230, 238 (4th Cir. 2008) (quoting White v. Provident Life &

Accident Insurance Co., 114 F.3d 26, 29 (4th Cir. 1997)). Because ERISA provides that its civil

enforcement mechanisms are the exclusive avenue for pursuing claims relating to employee

benefit plans, state law causes of action relating to such plans must be dismissed. Aetna Health

Inc. v. Davila, 542 U.S. 200, 209 (2004); Marks v. Watters, 322 F.3d 316, 323 (4th Cir. 2003).

Generally, "[w]hen a cause of action under state law is 'premised on' the existence of an employee benefit plan so that 'in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists,' ERISA preemption will apply." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990)) (citation omitted). Nevertheless, the Fourth Circuit has cautioned that, in order for a plaintiff's claims to be preempted by ERISA, not only must an "employee benefit plan" exist, but the plaintiff must also have standing to sue as a "participant" or "beneficiary" of that plan. Madonia v. Blue Cross & Blue Shield of Virginia, 11 F.3d 444, 446 (4th Cir. 1993). See also Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1027 (9th Cir. 1995) ("[W]ithout standing to enforce ERISA, there can be no ERISA preemption."). An ERISA "participant" is "any employee who is or may be eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A former employee is considered a "participant" in an ERISA plan as long as he has "a reasonable expectation of returning to covered employment or . . . [has] a colorable claim to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1988) (citations omitted); Gardner v. E. I. DuPont De Nemours and Co., Inc., 165 F.3d 18 (4th Cir. 1998) (table).

Woodruff has advanced no reason to suspect that he does not have standing to proceed under ERISA, given that his claim to severance benefits—while perhaps unavailing in the final analysis—is at least a "colorable" one. Firestone Tire & Rubber, 489 U.S. at 116; Keleher v. Dominion Insulation, Inc., 976 F.2d 726, at *3-4 (4th Cir. Oct. 5, 1992) (table) ("[T]he 'colorable' claim standard allows for a determination of 'participant' status absent a showing that the claimant is likely to succeed in their ultimate assertion of eligibility."). As a result, it is clear

9

that ERISA preempts Woodruff's state law claims, each of which depends upon the existence of a duty on the part of Monumental to provide Woodruff with a severance payment.[1] Cf. Griggs, 237 F.3d at 378; Biggers, 4 F.3d at 298. See generally Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-57 (1987) (describing the preemption of state contract law under ERISA).

To the extent that a state law claim arises from conduct for which Congress intended ERISA as the "exclusive" remedy, it must be dismissed. Marks, 322 F.3d at 323. Accordingly, the court concludes that each of Woodruff's state law claims—including any claim for an award of attorneys' fees that is based on state law—is preempted by ERISA and must therefore be dismissed. 29 U.S.C. § 1132(g); Allison v. Continental Cas. Ins. Co., 953 F. Supp. 127, 129 (E.D. Va. 1996).

**B.      Sufficiency of ERISA Claim**

1.      Failure to identify specific provision of ERISA

With respect to the ERISA claim asserted by Woodruff, Monumental first argues that it should be dismissed because it fails to identify under which provision of ERISA he attempts to make an ERISA claim. Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc., 102 F.3d 712, 714 (4th Cir. 1996) ("Section 502(a) provides the exclusive statement of civil actions available under ERISA to the Secretary of Labor, participants, beneficiaries, and fiduciaries.").

However, a state-law claim that falls within the scope of ERISA § 502(a) is "convert[ed]" into a federal cause of action. Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 290 (4th

---

[1]Woodruff also asserts a claim under Virginia Code § 6.2-1363—a statute which neither appears to provide for an individual right of action to remedy ERISA violations nor became effective until after the events in this case had already occurred. See id. To the extent that it is apposite to this litigation, however, any cause of action available to Woodruff under its aegis is preempted by ERISA for the reasons stated above. Gagliano, 547 F.3d at 238.

Cir. 2003); Marks, 322 F.3d at 323. Accordingly, to the extent that Woodruff is asserting a state

law contractual right under a benefit plan, he is likely claiming that he was wrongfully denied

benefits in violation of ERISA § 502, 29 U.S.C. § 1132(a)(1)(B). Devlin v. Empire Blue Cross

and Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001) ("Essentially, plaintiffs assert under [§

1132(a)(1)(B)] a contractual right under a benefit plan."). Even though Woodruff could have

specified with more clarity the specific ERISA provision under which he sought relief, given the

opportunity he was granted to amend his complaint, the court will not dismiss the amended

complaint on this ground.

> 2.      Failure to adequately allege a right to recovery under an ERISA plan

Monumental's more consequential argument urges to the effect that Woodruff's claims

should be dismissed because Woodruff has failed to plausibly allege that he can recover on a

wrongful denial of benefits claim under any severance benefits plan pursuant to which he claims

he is entitled to payment.

In this respect, the court must agree with Monumental. A necessary predicate to a

successful ERISA claim is a sufficient showing of an ERISA plan. Custer, 12 F.3d at 417;

Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). Despite availing

himself of the opportunity to file an amended complaint, Woodruff has insufficiently pled the

contours of any alleged employment benefit plan under which he expected a severance payment.

The amended complaint describes only the following about the severance payment that

Woodruff believes he should have received: (1) that Green informed Woodruff that he "would

receive a severance package as other employees did" (Compl. at ¶ 6); (2) that Woodruff was told

that the cost of his company car would be deducted from his severance pay (Compl. at ¶ 9); (3)

11

that Ferris and Woodruff believed they would receive a severance package (Compl. at ¶ 10); and

(4) that Monumental's President stated an intention to withhold severance pay from Woodruff

"and see what [Woodruff] does." (Compl. at ¶ 15.) Notably, the amended complaint makes no

allegations about any of the terms of the severance plan or even that it exists; it describes only

Woodruff's expectation of a severance payment. Cf. Fort Halifax, 482 U.S. at 12 ("To do little

more than write a check hardly constitutes the operation of a benefit plan.").

To the extent that Woodruff alleges that he was wrongfully denied benefits simply

because some fellow employees received severance payments from Monumental, his claim must

fail for want of allegation that he was also covered by such a plan. See Sandstrom v. Cultor Food

Science, Inc., 214 F.3d 795, 797 (7th Cir. 2000) ("Statements by plan administrators, side

agreements and understandings, or even special offers made to many of a firm's employees, do

not change the contents of the plan applicable to other employees."). Furthermore, Woodruff has

alleged no detail whatsoever about the benefits plan pursuant to which the severance payment

was to be made, such as its duration, beneficiaries, eligibility prerequisites, claims procedures, or

calculation of severance benefits. Compare Wilson v. Kimberly-Clark Corp., 254 F. App'x 280,

285-86 (5th Cir. 2007) (unpublished); Smith v. Sydnor, 184 F.3d 356, 363 (4th Cir. 1999); Blair,

158 F. Supp. 2d at 656-57. Nor has he alleged the identity of the plan's fiduciaries or

administrators, whether the plan gave them discretion in making benefits decisions, or that any of

them engaged in wrongful conduct. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,

115 (1989); Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996).

Woodruff's conclusory allegation that the facts described in his amended complaint

"constitute a violation of [ERISA]," see Compl. at ¶ 18, cannot on its own support a reasonable

inference that he could recover from Monumental under the statute. Iqbal, 129 S. Ct. at 1949. Without at least some allegation that he was entitled to a severance payment under the ERISA plan that he has alleged—as opposed to simply expecting such a payment—his complaint has failed to state a plausible claim for relief. Id. at 1950.

Nor do the exhibits attached to the amended complaint assist Woodruff in this regard. The unexecuted documents relating to a co-employee's waiver of certain claims with respect to his termination substantiate Woodruff's claims only obliquely. See Compl. at Ex. 4 (noting that the employee's receipt of six months' pay and a lump sum payment is "substantially equivalent" to the benefits he would have received under a "Separation Pay Plan"). These claims-waiver forms do not set out any terms of a severance benefits plan, nor do they pertain to Woodruff. In fact, the amended complaint fails to reference any of these claims-waiver documents in its allegations. Nowhere does Woodruff allege that he participated in the same plan as his co-worker or would be eligible for a payment under the terms of that plan. Nor do any of his pleadings describe whether, in the event that he participated and was eligible, his severance payment calculations would mirror those of his co-worker.

Obviously, Woodruff is not required to produce a welter of evidence in his complaint. Edwards, 178 F.3d at 243-44. But neither is he entitled to proceed on the basis of a claim that does not give rise to a plausible claim for relief. Twombly, 550 U.S. at 570. Woodruff is not entitled to relief on the basis of the allegations of his amended complaint because he has made no allegation regarding any of the terms of the ERISA plan or plans of which he claims he was a participant and therefore has not pled any viable theory of recovery under ERISA. While ERISA does not mandate that a plaintiff allege "a formal, written plan" in order to properly plead that a

plan exists, Donovan, 688 F.2d at 1372, a plaintiff must still plead at least enough detail to allege

the basic fact that he is entitled to a payment under the plan in order to sufficiently state a claim

for relief. Wilson, 254 F. App'x at 285-86; Smith, 184 F.3d at 363. The only allegations

Woodruff has made about the plan are that it existed and that several Monumental employees

thought that he would receive a payment pursuant to it. But without any allegation regarding the

terms of the plan, it is impossible for Woodruff to plausibly claim that they were correct, even

assuming that all of his factual allegations are true. Erickson, 551 U.S. at 94.

As the matter stands, even after being granted the opportunity to amend his complaint,

Woodruff has pled only the conclusory allegation that he is entitled to a severance payment.[2] His

claims must therefore be dismissed.[3]

---

[2] The court notes that it may be possible for the plaintiff to distinguish his case from Biggers and avoid ERISA preemption of his state-law claims if he is able to allege that he was promised severance payments pursuant to an informal individual arrangement between himself and Monumental that does not exhibit the requisite features of an ERISA plan. See Retail Industry Leaders Ass'n v. Fielder, 475 F.3d 180, 190 (4th Cir. 2007); Elmore, 23 F.3d at 861 ("An informal plan may exist independent of, and in addition to, a formal plan as long as the informal plan meets all of the elements outlined in [Donovan, 688 F.2d at 1372].") (emphasis added); Emery, 354 F. Supp. 2d at 592; Blair, 158 F. Supp. 2d at 659 n. 2. The plaintiff has made no such argument, however, and the thrust of his case appears to be that he was denied benefits pursuant to an "organized scheme" or under a plan made available to other Monumental employees. Winterrowd, 321 F.3d at 939. Stated differently, the plaintiff does not allege that he had a special arrangement with his employer regarding his separation benefits, but rather that he was denied the opportunity to participate in a plan that was offered to other employees. Cf. Fort Halifax, 482 U.S. at 12. The amended complaint therefore does not permit the court to reach a result other than that contemplated by Biggers at this time.

[3] The court reiterates that this holding squares with the court's finding, pursuant to Biggers, that ERISA preempts Woodruff's contract claim because it involves an ERISA plan. Biggers, 4 F.3d at 297. Put simply, ERISA applies to Woodruff's claims because he has alleged that an ERISA plan exists; but his claim must nonetheless fail, due to his failure to adequately allege that he can recover for any ERISA violation, given the insufficiently-sketched portrait of the plan he alleges. The mere fact that his ERISA claim fails for want of sufficient factual allegation does not warrant the resurrection of his state-law claims. Cf. Marks, 322 F.3d at 323 (describing "simple preemption" under ERISA as precluding state-law claims even when there is no analogous federal cause of action upon which the plaintiff may proceed).

## IV.   Conclusion

For the foregoing reasons, the court will grant Monumental's motion to dismiss each of the claims against it. This dismissal is without prejudice to any motion for leave to file an amended complaint.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 27th day of January, 2011.

_____
Chief United States District Judge